UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| BRYANT J. KING | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 1:04-CV-369 |
| | ) | (1:01-CR-12) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OF DECISION AND ORDER

This matter is before the Court on a "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" ("2255 Motion") filed by petitioner Bryant King ("King") on October 4, 2004. The government responded to that motion on January 11, 2005, to which King replied on February 9, 2005. Subsequently, King filed a "Motion to Supplement King's § 2255" on March 11, 2005. The government did not file a response to King's motion to supplement. For the following reasons, King's 2255 Motion will be DENIED.

### Factual and Procedural Background

The Seventh Circuit Court of Appeals summarized the facts of this case as follows:

> On January 29, 2001, members of the Fort Wayne, Indiana Police Department arrested King immediately after he sold $5,000 worth of methamphetamine to undercover police detective Steven Espinoza. Espinoza had arranged the sale with the help of Charles Dominguez, a confidential informant. Dominguez arranged for the sale to take place at a gas station, drove Espinoza to the gas station, and was present during the sale, which took place in the back seat of Dominguez's car.
> Members of a police surveillance team, who had witnessed the transaction and heard details of the sale through a listening device, arrested King after he returned to his car. A search of King and the car revealed $1,000 on his person and $4,000 on the driver's side floorboard. The recovered currency was pre-recorded money Espinoza used to purchase the drugs. In the passenger seat of King's car when he was arrested was

1

Aaron Montgomery.  Montgomery was questioned by the police and later released.

After King was arrested, the drugs he sold to Espinoza were field-tested (the test was positive for methamphetamine), photographed, and sealed in an evidence bag.  Neither the drugs nor the bags the drugs were sold in were fingerprinted.  Espinoza transferred the drugs to Scott Criswell, a detective with the Fort Wayne Police Department who also served as a member of a Drug Enforcement Administration ("DEA") task force.  Criswell then transferred the evidence bag to a drop box where the bag was retrieved by an evidence technician and placed in an evidence custody room until Criswell took back the bag and mailed it to a DEA lab for analysis.

At the lab, Odiest Washington, a DEA forensic chemist, received the drugs and tested them.  Washington accomplished this by reducing the drugs to a powder (the drugs had previously been in chunks) and testing a portion (25 grams) of the powder.  Washington's test confirmed that the powder was, in fact, a mixture containing methamphetamine.

In preparation for trial, King initially pursued a theory that he had been entrapped by Montgomery and Dominguez as agents of the government.  In order to pursue this theory, King requested that the court approve the expenditure of public funds so that King could retain an audio expert.  King asserted that a tape recording of phone calls between Dominguez and King arranging the sale had been edited to eliminate Montgomery's voice from the conversation.  The court approved King's request.

In a September 2001 status conference, King's attorney reported to the court that tests of the tape recording did not find any indication that a voice had been edited out of the recording.  King's attorney, however, requested a second expert be retained to conduct a test of the tape.  Over the government's objection, the court agreed to a second test.

A week after the request for a second audio expert, King also requested a fingerprint expert to determine if Dominguez's fingerprints would be found on the drugs or on the bags in which they were sold.  The court suggested that the Fort Wayne Police Department or the Indiana State Police could conduct the test for free.  King rejected this idea.  The court, therefore, took the motion under advisement and directed King to file a petition setting forth the exact services and the costs.  King never filed this petition.

In February 2002, King's attorney reported to the court that the second audio analysis had not detected any doctoring of the tape.  As a result, in March 2002, the court denied King's motion to suppress the tape.  Shortly after the suppression ruling, King filed a pro se motion alleging ineffective assistance of counsel.  The court treated this motion as a motion for new counsel and appointed new counsel for King.

At about this time, King's defense theory changed.  Rather than assert that, although he sold the drugs to Espinoza, he was the victim of an entrapment involving Dominguez and Montgomery, King's new theory (and the theory he presented at trial) was that Montgomery, not he, was the person who sold the drugs to Espinoza.  To help corroborate this theory, King's new attorney adopted the outstanding request for a fingerprint expert.  This time, however, the purpose of the test was to show that King's fingerprints were not on the drugs.  The court denied this request.  The court pointed out, however, that King could argue to the jury that no fingerprint test was ever conducted

2

>and the implications of the absence of such a test.
>	After a two-day trial, a jury found King guilty of distributing more than 50 grams, but less than 500 grams, of a mixture containing methamphetamine.  At sentencing, the court first determined that King's initial sentence level under federal sentencing guidelines was 26, based on the weight of the methamphetamine being approximately 142 grams.  The court then increased the sentence level by two for obstruction of justice based on what the court considered King's perjurious testimony at trial that he was not the person who purchased the drugs from Espinoza, and for pursuing a "wholly spurious" issue related to the tape which resulted in an unnecessary expenditure of public funds.  Finally, the court set King's sentence level at 34 because of a previous burglary conviction.  The judge sentenced King to 262 months' imprisonment, the lowest end of the sentencing range, and five years of supervised release.

*United States v. King*, 356 F.3d 774, 776-77 (7th Cir. 2004).  After this court sentenced King, he raised three issues on appeal to the Seventh Circuit .

>First, King argues that the district court abused its discretion when it denied his request for a fingerprint expert.  Second, King claims that the government did not present sufficient evidence to support his conviction.  Specifically, King argues that the evidence was insufficient due to a break in the chain of custody, discrepancies in the weight of the drug evidence, and that DEA chemist Washington's testimony was vague and should not have been relied upon by the jury.  Finally, King argues that the district court erred in calculating his sentence by improperly determining the amount of drugs involved and by enhancing his sentence because of obstruction of justice.

*Id*. at 777-78.  The Seventh Circuit found King's arguments unavailing and affirmed this court's decision on January 28, 2004.

On October 4, 2004, King filed the present 2255 Motion in which he asserts three (3) grounds for overturing his conviction.  More specifically, King alleges in ground one that his appointed pre-trial counsel was ineffective for raising an entrapment defense contrary to his defense, for wrongfully providing material evidence to the government, for failing to submit the audio expert's report, for failing to detail the services needed for a fingerprint expert, and for violating his right to a fast and speedy trial.  As to ground two, King contends that the government knowingly presented false testimony as well as inadmissible evidence to secure his

3

conviction. He alleges that the police witnesses provided perjurious testimony and inadmissible evidence to prove a material element of the crime, which prejudiced King. He further alleges that the government failed to disclose evidence favorable to King after multiple requests. In ground three, King again raises ineffective assistance of counsel as to his appointed trial counsel. He contends that his trial counsel's performance was ineffective because he failed to present exculpatory evidence to the jury and because he failed to raise a 6th Amendment right to have his sentence enhancements determined by a jury.

On March 11, 2005, King filed a motion to amend his § 2255 Motion raising an additional ground to overturn his conviction and sentence (hereinafter "ground 4"). In ground four, King contends that his sentence was imposed beyond the applicable statutory maximum because his term of imprisonment was calculated using the total weight of the mixture containing the methamphetamine and not the actual amount of pure methamphetamine present in the mixture.

## **Discussion**

This Court will consider King's assertions after a brief overview of the standards governing a motion under section 2255. The Habeas Corpus Act of 1867, ch. 28, 14 Stat. 385 (1867) (codified as amended at 18 U.S.C. §§ 2254-2255 (1976)), authorized the federal courts to grant a writ of habeas corpus to any state or federal prisoner "restrained . . . in violation of the constitution, or of any treaty or law of the United States." So far as relevant, section 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution of laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of

> the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Relief under section 2255 is collateral and is available to correct any legal error made during conviction or sentencing which is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a miscarriage of justice." *Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1992) (citing *Haase v. United States*, 800 F.2d 123, 126 (7th Cir. 1986)). Thus, a section 2255 motion is neither a recapitulation of, nor a substitute for, a direct appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (overruled on other grounds, *Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994)). Hence, there are three types of issues which cannot be raised by way of a § 2255 petition: (1) issues that were raised on direct appeal (absent a showing of changed circumstances); (2) non-constitutional issues that could have been but were not raised on appeal; and (3) constitutional issues that were not raised on direct appeal unless there is a showing of cause for the default as well as actual prejudice from the failure to appeal. *Id.*

Ineffective assistance of counsel claims are governed by the now familiar two-prong standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under that standard, a defendant is entitled to relief if counsel's performance fell below the wide range of professionally competent assistance and the defendant suffered prejudice as a result of that performance. Prejudice under the *Strickland* standard means a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694, 104 S.Ct. at 2068.

This court will first address the grounds raised by King that do not involve ineffective assistance of counsel, grounds two and four. In ground two, King alleges that the government's witnesses falsely testified that King had a cellphone on him when he was arrested and later used that cellphone in an attempt to cooperate with the police by setting up further narcotics purchases. (*See* King's Memorandum in Support of § 2255 Motion, p. 12). In addition, King contends that the government entered inadmissible evidence, in the form of cellphone records, to support the witnesses' testimony. *Id*. at 11. King further contends that the government failed to disclose the cellphone confiscated from him when he was arrested, failed to disclose the identity of a suspect wearing a black leather jacket, failed to produce the black leather jacket, failed to produce a confession statement, and failed to analyze the plastic baggies containing the narcotics for fingerprints. *Id*. at 24-31. King argues that these actions by the government violated his 14th Amendment due process rights. *Id*.

All of King's arguments in ground two are constitutional issues that King could have raised in his direct appeal but did not. Therefore, he must show cause for not raising them in his direct appeal and actual prejudice for not doing so. *Belford*, 975 F.2d at 313. This King fails to do. He provides no explanation as to why the issues in ground two were not raised in his direct appeal and he does not even address whether he suffered any actual prejudice for not raising these arguments before the Seventh Circuit. Accordingly, the issues that King presents in ground two cannot be raised in a § 2255 Motion and therefore his motion is DENIED as to ground two.

In ground four of his § 2255 Motion, King contends that this court imposed a sentence that violated the law since his term of imprisonment was calculated using the total amount of

6

methamphetamine mixture and not the amount of pure methamphetamine contained in the mixture.  (*See* King's Motion to Supplement, p. 4).  King argues that only 25 grams of the narcotics were actually tested and the results of the test indicated only ten percent of the mixture was methamphetamine.  King therefore contends that only 2.5 grams of methamphetamine should be attributed to him in determining his sentence.  *Id.* at 9.  This then would reduce his sentence range from 262 - 327 months to 33 - 41 months.  *Id.* at 13.  In support of his argument, King cites to *United States v. Stewart*, 361 F.3d 373 (7th Cir. 2004), which he believes supports the proposition that only the pure amount of methamphetamine present in a mixture may be used to calculate the quantity of drugs and the relating base offense level.  King also cites to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 125 S. Ct. 21 (2004) and *United States v. Booker*, 125 S. Ct. 738 (2005), arguing that his 262 month imprisonment violates his Sixth Amendment right to a trial by jury.

As with ground two, ground four is a constitutional issue that King could have raised on appeal but did not.  Therefore, to proceed with ground four in his § 2255 Motion, he must show cause for not raising the issues in his direct appeal and actual prejudice for not doing so. *Belford*, 975 F.2d at 313.  King contends that he can establish both cause and prejudice.  As for cause, he states that he could not raise the issues in ground four in his direct appeal because the legal basis for his claim was not available until the Seventh Circuit's ruling in *Stewart* and the Supreme Court's ruling in *Blakely* and *Booker*.  As for prejudice, he states that occurred when this court sentenced him to 262 months imprisonment, contrary to the holding in *Stewart*.

Again, as with ground two, King fails to establish both cause and prejudice, which forbids the raising of ground four in his § 2255 Motion.  King cannot establish cause because

neither *Stewart*, *Blakely*, or *Booker* are applicable to his case.  King's reading and interpretation of *Stewart* is wholly misplaced.  In *Stewart,* the Seventh Circuit held that "only the amount of pure drug contained in an unusable solution, or the amount of usable drug that is likely to be produced after that unusable solution is fully processed, may be included in the drug quantity . . . ."  *Id.* at 382.  No portion of the narcotics in King's case was in an unusable state or solution.  Therefore, the total weight of the narcotics confiscated was properly used to determine his sentence.

King's reliance on *Apprendi, Blakely*, and *Booker* is also misplaced for two reasons.  First, the Seventh Circuit clearly indicated that the Supreme Court's ruling in *Booker* is not available under collateral attack, such as King's present § 2255 Motion.  *See Simpson v. United States*, 376 F.3d 679, 681 (7th Cir. 2004).  Second, King's contention, under *Apprendi*, that his sentence was enhanced beyond the statutory maximum based on facts not submitted to a jury is simply incorrect.  The court instructed the jury to determine if the amount of narcotics was between 50 and 500 grams or less than 50 grams, and then the jury determined, based on evidence presented during King's trial, that the amount of narcotics was between 50 and 500 grams.  Consequently, *Apprendi* does not apply to King's case.

King also cannot establish prejudice because his sentence was not imposed contrary to *Stewart*.  In actuality, King's lengthy sentence is dictated by his status as a career offender, based upon his criminal history.  *See King*, 356 F.3d at 780 (7th Cir. 2004) ("King is a career offender and does not challenge his career offender status . . . [h]is career offender status dictates the term of his sentence.").  Consequently, King can neither establish cause nor prejudice in relation to ground four and he cannot therefore raise these issues in a § 2255 Motion.  Accordingly, King's

8

§ 2255 Motion in relation to ground four is DENIED.

Grounds one and three encompass King's ineffective assistance of counsel claims. In ground one, King claims that his appointed pre-trial counsel was ineffective for raising an entrapment defense contrary to his defense, for wrongfully providing material evidence to the government, for failing to submit the audio expert's report, for failing to detail the services needed for a fingerprint analysis, and for violating his right to a speedy trial. (*See* 2255 Motion, p. 4). In ground three, King charges that his appointed trial counsel's performance was ineffective because he failed to present exculpatory evidence to the jury and because he failed to raise a 6th Amendment right to have his sentence enhancements determined by a jury. *Id*. at 5.

As mentioned earlier, to prevail on his ineffective assistance of counsel claims, King must show that his counsel was deficient and that the deficiency prejudiced the outcome of the proceeding. *Strickland*, 466 U.S. at 687. As the *Strickland* standard is formulated in the conjunctive, King must make the requisite showing on both elements; failure to prove either deficient conduct or prejudice invalidates an ineffective assistance claim. *See Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002) ("A failure to establish either [*Strickland*] prong results in a denial of the ineffective assistance of counsel claim.")(citation omitted), *cert. denied sub nomine Rastafari v. Davis*, 537 U.S. 914, 123 S.Ct. 294, 154 L.Ed.2d 196 (2002).

When considering whether an attorney's conduct was unreasonably deficient under the first prong of the *Strickland* test, a court must operate under a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and treat the counsel's performance with high deference. *Id.* at 689; *see also Williams v. Washington*, 59 F.3d 673, 679 (7th Cir. 1995) (The first prong of *Strickland* "contemplates deference to strategic

9

decision-making."). In order to prevail on the first prong of the *Strickland* test, a defendant must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. With regard to the second prong, the court will only disturb a criminal conviction if "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.* at 694. In other words, "[i]n order to demonstrate that his federal constitutional right to effective assistance of counsel was violated, a defendant must show that effective assistance would have given him a reasonable shot at acquittal." *Gibbs v. VanNatta*, 329 F.3d 582, 584 (7th Cir. 2003) (noting that this is a "different and lower standard" than proving actual innocence); *see also Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.").

     More specific to ground one, King first contends that his counsel was ineffective because he violated King's right to a speedy trial when he filed a motion on May 7, 2001 to continue King's trial, which was scheduled for May 14, 2001. However, King does not develop this argument any further and fails to establish how his attorney was deficient and how he was prejudiced by his attorney filing the motion to continue the trial. In fact, the motion to continue the trial enabled King and his attorney to pursue many of the legal defenses that King advocated. Consequently, since King has not shown any prejudice from his counsel filing the May 7, 2001 motion to continue, he can not establish that his attorney provided ineffective assistance of counsel.

King next contends in ground one that his counsel was "actively representing conflicting interests" in regards to tape recorded conversations and an entrapment defense. In regards to the recorded conversations between King and the confidential informant (CI), King pursued a claim that the tapes had been altered to remove the voices of other potentially culpable parties. The tapes were subsequently sent to an audio expert in Texas for analysis. The audio expert concluded that the recordings were original and not altered in anyway. The expert did divulge that there were some minor discrepancies between the audio tapes and the transcripts of the audio tapes produced by the Fort Wayne Police Department. King claims that his counsel was ineffective for not submitting the audio expert's report to this court for review and as a result, "led the court to believe King was involved in conversations, and assumed King had a cellphone and tape recordings altered to remove Montgomery [sic] voice." (*See* King's Memo in Support, p. 6).

Even if King's assertions are correct, he still does not satisfy the second prong of *Strickland* because he fails to demonstrate how not submitting the audio expert's report "would have given him a reasonable shot at acquittal," *Gibbs*, 329 F.3d at 584, as the audio taped conversations were never entered into evidence and the jury never considered them. Nor is King's counsel deficient for not submitting the audio expert's report. Since the audio tapes themselves were not entered into evidence, the audio expert's report was rendered irrelevant and most likely inadmissible at King's trial. As a result, King has not shown that his counsel's actions were deficient nor that he was prejudiced by his counsel's decision not to submit the audio expert's report to the court.

King also asserts that his counsel was "representing conflicting interests" as to his

entrapment defense.  King states that "on May 18, 2001 counsel gravely prejudiced [King] when he provided the Government through correspondence . . . [the] cellphone number 418-0243, stating it belonged to King and to check informant cellphone records to see how many times call were made to and from cellphone records [sic]."  (*See* King's Memo in Support, p. 7).  King claims that the government relied "on this prejudice" to convict him.  *Id*.

Again, King fails to establish that his attorney's actions prejudiced him in any way.  The government could have easily obtained the cellphone number from a number of different sources including the CI and the officer who was present when King used his cellphone in an attempt to set up further narcotic transactions.  Consequently, his counsel's actions were not deficient and King was not prejudiced in anyway.  Therefore, King's counsel was not ineffective for providing his cellphone number to the government.

King lastly asserts in ground one that his counsel was ineffective for not detailing to this court the exact services needed for a fingerprint analysis, which deprived "King of potential exculpatory evidence."  (*See* King's Memo in Support, p. 7-8).  However, King's counsel did request that a fingerprint analysis be performed by an outside agency when the government informed the court that the state police lab was to busy to complete the analysis.  *Id*.  Once again, King fails to establish how fingerprinting analysis "would have given him a reasonable shot at acquittal," *Gibbs*, 329 F.3d at 584, as the government presented witness after witness that testified King participated in a hand to hand buy of the narcotics.  In addition, the Seventh Circuit stated in King's direct appeal that this court did not abuse its discretion in denying King's request for a fingerprint analysis as "King did not have a plausible defense that would have made a fingerprint analysis necessary."  *King*, 356 F.3d at 778.  Consequently, King's

12

counsel was not ineffective for not detailing the exact services needed for the fingerprint analysis and all of the issues raised in ground one of King's 2255 Motion are DENIED.

In ground three, King contends that his trial counsel was ineffective for failing to introduce the CI's cellphone records into evidence at King's trial (*see* King's Memo in Support, p. 32), for failing to call Jeff Williams to testify about the quality and quantity of drugs, the chain of custody for the narcotics in evidence, and the disappearance of the cellphone, *id*. at 36, and for failing to raise King's 6th Amendment right to have sentence enhancements determined by a jury. *Id*. at 40.

In regards to the CI's cellphone records, King contends that while his trial counsel called the CI as a witness, his failure to submit the cellphone records prejudiced him because these records "would have impeached all Government witnesses testimony and exonerated [King]." (*See* King's Memo in Support, p. 33). As with his other claims, King does not establish how submitting the CI's cellphone records "would have given him a reasonable shot at acquittal," *Gibbs*, 329 F.3d at 584, as he was charged with and found guilty of narcotics distribution. The government presented numerous witnesses that personally viewed King completing a hand to hand sale of the drugs to an undercover officer. As the Seventh Circuit stated, "[t]he evidence that King sold [the undercover officer] methamphetamine is overwhelming." *King*, 356 F.3d at 778. The CI's cellphone records would not have changed the jury's decision and King was not prejudiced by his trial counsel's decision not to submit the CI's cellphone records into evidence at King's trial. Consequently, King's trial counsel was not ineffective in regards to this issue.

Next, King argues that his trial counsel was ineffective for failing "to call Jeff Williams as a witness to testify to the quality and the quantity of the drugs allegedly secured into evidence

13

and the whereabouts of that evidence, and the disappearance of the cellphone that was supposedly seized."[1]  (*See* King's Memo in Support, p. 36-37).  King contends he was prejudiced by his counsel's failure to call Detective Williams, who could have testified to the discrepancies in the weight of the narcotics and to the break in the chain of custody.  King raised these very arguments before the Seventh Circuit in his direct appeal.  *See King*, 356 F.3d at 779. ("King argues that there was a break in the chain of custody of the drugs."  "King seizes on what he suggests are material discrepancies in the weight of the drugs weighed by Espinoza in Fort Wayne and the amount of drugs weighed by Washington at the DEA labs.").  King's attempt to resurrect these same arguments under the guise of ineffective assistance of counsel are equally unavailing.  The Seventh Circuit concluded that "[w]ith respect to King's argument concerning the chain of custody, the testimony of Espinoza, Criswell and Washington establishes an unbroken chain of custody." *Id*.  As to the alleged discrepancy in the weight of the narcotics, the Seventh Circuit concluded that this argument was "unavailing" and "also had little factual foundation." *Id*.  King's trial counsel can hardly be faulted for not calling Det. Williams when his potential testimony would not have altered the verdict reached by the jury.  Accordingly, King has failed to establish under *Strickland* that his trial counsel was ineffective for not calling Det. Williams as a witness at trial.

As with the just discussed issue, King attempts here to raise arguments that he raised in his direct appeal, but now under the guise of ineffective assistance of counsel.  King argues that his trial counsel was ineffective for not raising his 6th Amendment right to have a jury determine his sentence enhancements based on the amount of narcotics and on obstruction of justice. (*See*

---

[1] King does not further develop his argument about what Det. Williams would testify to in regards to the missing cellphone and therefore does not show that his counsel was ineffective with regards to this issue.

King's Memo in Support, p. 41).  King also raised these very same arguments earlier in his 2255 Motion.  *See supra*, p. 7-8.  As already discussed by the Seventh Circuit and this court, these arguments are completely without merit and King's counsel cannot be faulted for not raising them before this court.  Accordingly, King's counsel was not ineffective for failing to do so.

King further argues that his trial counsel was ineffective for not "raising the double jeopardy clause of the fifth amendment . . . ", as King contends that this right was violated when his prior convictions were used to enhance his sentence.  *Id*. at 42-43.  This argument is wholly without merit as the Seventh Circuit stated in *United States v. Shaw*, 26 F.3d 700, 701 (7th Cir. 1994):

> Recidivist sentencing has been part of the criminal justice system since the founding of the nation, and it has been sustained against all manner of double jeopardy claims. The essential point is simple: a sentence enhanced by reference to a prior conviction is not a 'second punishment' for the first crime. It is a punishment for the new crime, tailored to the offender's circumstances in light of knowledge that higher penalties are needed to deter persons who have not responded to lesser sanctions.

*See also Oyler v. Boles*, 368 U.S. 448, 451, 82 S.Ct. 501, 503, 7 L.Ed.2d 446 (1962); *Gryger v. Burke*, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948); *United States v. Alvarez*, 914 F.2d 915, 920 (7th Cir.1990).  Since it is well established that a criminal sentence that is enhanced based upon past criminal convictions does not violate the double jeopardy clause of the Fifth Amendment, King's trial counsel was not ineffective for failing to raise such an argument.  Consequently, King has failed to establish that his trial counsel was ineffective in any way and his 2255 Motion in respect to ground three is DENIED.

## CONCLUSION

On the basis of the foregoing, the King's "Petition under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" is DENIED.

SO ORDERED this 14th day of April 2005.

>s/ William C. Lee
>William C. Lee, Judge
>United States District Court