UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Cause No.: 1:01-CR-12 |
| ) | |
| BRYANT JAVON KING ) | |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the court on the Motion for New Trial Based on Newly Discovered Evidence filed by Bryant Javon King ("King") on July 18, 2005. The government filed a response to the motion on September 1, 2005, and King filed a reply brief on September 19, 2005. For the reasons set forth herein, the motion is DENIED.

**DISCUSSION**

A jury convicted King of distribution of methamphetamine on August 14, 2002. Issues regarding sentencing were briefed by the parties and ruled on by the court, and King was finally sentenced on April 30, 2003, to 262 months imprisonment. King appealed his conviction to the Seventh Circuit Court of Appeals, which affirmed the conviction on February 23, 2004. On October 4, 2004, King filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. On April 14, 2005, the court denied King's motion. Docket at 173. King again filed an appeal to the Seventh Circuit. He also filed a motion for Certificate of Appealability in this court, which was denied by written order entered on May 18, 2005. Soon thereafter, King filed a motion for leave to proceed *in forma pauperis* on appeal. Since the court had denied his request for a Certificate of Appealability, the motion to proceed *ifp* was also denied. On July 18, 2005, King

filed this motion for a new trial.[1]  Subsequently, on August 4, 2005, the Seventh Circuit dismissed King's latest appeal due to his failure to pay the required docketing fee.

Having failed to obtain any favorable rulings on his various post-conviction motions or appeals, King has now turned to the present motion for a new trial, which he files pursuant to Fed.R.Crim.P 33.  In this latest motion, King contends that he should be granted a new trial as the result of newly discovered evidence.  This newly discovered evidence, according to King, consists of the following:

> 1.  An allegedly undisclosed DEA report, which was favorable to King and material to his defense;
>
> 2.  The indictment of Fernando Villafana, which was favorable to King, material to his defense, and which he claims warranted the submission of jury instructions on the defense of entrapment;
>
> 3.  Post-trial discovery consisting of an informant's cell phone records which, King argues, "reveal prosecution's officer's testimony was false and included . . . in closing argument to render a conviction"; and
>
> 4.  Post-trial discovery of King's counsel's correspondence with the government, which "reveals prosecution relied on use of officer's perjured testimony, failed to disclose material evidence, and included its use in closing arguments."

Motion for New Trial Based on Newly Discovered Evidence, p. 2.  The government, however, argues that the "evidence" to which King alludes is not new at all and/or that it is not material and would not have resulted in a verdict of acquittal.  See generally, Government's Response to the Defendant's Motion for New Trial, docket at 189.

---

[1] Criminal Rule 33 mandates that "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed.R.Crim.P. 33(b)(1).  Since King was convicted on August 14, 2002, and this motion was filed on July 18, 2005, the motion is timely.

In order to prevail on a motion for new trial, a petitioner has to prove that the new evidence "(1) was discovered after the trial; (2) could not have been discovered earlier with due diligence; (3) is material, not simply cumulative or impeaching; and (4) would probably lead to a verdict of acquittal." *United States v. Woods*, 301 F.3d 556, 563 (7th Cir. 2002) (citing *United States v. Austin*, 103 F.3d 606 (7th Cir. 1997)).  A petitioner bears the burden of establishing all four of these factors.  *Id*.

**1.  "DEA 6" Report.**

King first contends that an investigative report, known as a DEA 6 report[2], concerning his case was never provided to him until long after his trial, and that the report contains "potential impeachment evidence" that was "both favorable and material to the defense . . . ." Petitioner's Memorandum, p. 2.  King also argues that the government's alleged failure to disclose this report constituted a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  King alleges that "[t]he newly discovered DEA 6 Report was submitted to the defendant herein, on August 18, 2004, approximately two years after his jury trial . . ." after he had apparently presented the U.S. Department of Justice with a Freedom of Information Act request.  *Id*., p. 5.

King's contentions with regard to this investigative report are meritless.  King's assertion that this report was withheld from him is mistaken or perhaps even disingenuous.  As the government correctly points out in its response brief, King himself attached a copy of this very report to a letter he wrote to this court on June 14, 2001, and which was filed of record in this case on June 18, 2001.  Government's Response, p. 15; see docket at 39.  Thus, King's

---

[2] The "DEA 6" that King mentions refers to a standard Drug Enforcement Administration form used by investigating officers to record their activities and observations in the course of a drug investigation and/or arrest.

3

contention that he never received a copy of the report until sometime after his conviction (which occurred on August 14, 2002), or that the government committed a "Brady" violation by not providing a copy of the report to him, is wholly without merit. Since this is clearly not "newly discovered evidence" it cannot form the basis for a motion for new trial under Fed.R.Crim.P. 33.

**2. Indictment of Fernando Villafana.**

King next contends that he was not provided with a copy of an indictment pertaining to Fernando Villafana and that Villafana's "arrest and conviction was [sic] discovered after trial . . . ." Petitioner's Memorandum, p. 14. King also alleges that this "newly discovered evidence is material to issues before this court and evidence is pure nature [sic] of defendant's defense and a new trial would provide a new result." *Id*., p. 15. King argues in his brief in support of this motion that the facts and circumstances surrounding the arrest and subsequent conviction of Villafana on drug distribution charges would have somehow served to exonerate King or, at the least, provide a jury with sufficient evidence on which to arrive at a different verdict in King's own trial. *Id*., pp. 8-15.

This assertion by King also fails to establish even a colorable claim to the right to a new trial. Villafana was charged by way of an indictment filed on June 25, 2003, in case number 1:03-CR-45, with the crime of distribution of more than 50 grams of methamphetamine, or aiding and abetting same. Villafana ultimately pleaded guilty to the charge and was sentenced in this court on November 10, 2003, to a term of 60 months imprisonment. The charge to which Villafana pleaded guilty involved drug distribution activities that occurred on June 11, 2003, almost a full year after King was tried and convicted. King, however, maintains that the "indictment and conviction of Fernando Villafana is both favorable evidence and material to

4

King's defense, that warrants entrapment jury instructions." Motion for New Trial, p. 2.  The government counters that "King cannot show how the charges against Villafana for conduct occurring on June 11, 2003, were material and would probably have lead to a verdict of acquittal." Government's Response, p. 17.  The government further points out that King's conviction was based on a drug transaction that occurred on January 29, 2001, and which involved King himself, an undercover detective, and a confidential informant (as well as several uniformed officers who observed the transaction). *Id*.  The government contends that the indictment and conviction of Villafana "had no bearing [nor] was [it] material to King's defense. . . ." *Id*., p. 18.

The issue involving Villafana is discussed at length in the briefs submitted by King and the government.  The gist of the matter, however, is as follows.  On or about January 9, 2001, a robbery occurred at a Fort Wayne, Indiana, business known as the Esperanza Day Spa, which was owned by Fernando Villafana.  The government, and apparently local police at the time, believed that drugs were stolen from the business at the time of that robbery.  King maintains that he had no knowledge that the robbery took place or that drugs were stolen during the commission of that crime.  He further claims that Aaron Montgomery, and perhaps another man named Dominguez (who was the confidential informant during the drug deal which resulted in King's arrest), committed the robbery and stole the drugs.  King then argues that on January 29, 2001, he had no role in the drug sale that resulted in his arrest, and that he was entrapped by police after that transaction due to his refusal to "turn" on Villafana.  Then, getting back to the indictment of Villafana, King argues that "[t]he indictment and conviction of Fernando Villafana unequivocally supports King's defense theory that officers entrapped him and trumped-up

5

charges, and King would be the 'fall guy' if he did not set-up Fernando Villafana or purchase drugs from Villafana." Defendant's Reply to Government's Response, p. 3.

One of several problems with this argument, as the government points out, is the fact that King never raised an entrapment defense. While there was some discussion of such a defense prior to King's trial, even King admits that the court precluded him from raising an entrapment defense since he maintained all along that he was not involved in the drug transaction on January 29, 2001. *Id*. His failure to admit any involvement whatsoever obviously was completely inconsistent with an entrapment defense, since without an admission of involvement (at least involuntary or coerced involvement) the affirmative defense of entrapment cannot apply as a matter of law. Furthermore, the overwhelming evidence in this case belies any assertion King could make regarding entrapment. The government's brief in this case gives an extremely detailed summary of the events that occurred on January 29, 2001, complete with citations to the record in this case. See Government's Response, pp. 6-14. Those facts need not be reiterated here. It is sufficient to point out that the government's position on this issue is well taken. The indictment and subsequent conviction of Villafana was not relevant or material to King's trial (and, as explained, had not even *occurred* at the time). Consequently, it cannot be "newly discovered evidence." Rather, King makes a leap of faith by contending that the subsequent indictment and conviction of Villafana somehow lends support to his "theory," never presented at trial, that he was somehow entrapped or, at the very least, that he was entitled to "entrapment jury instructions." Defendant's Motion for New Trial, p. 2. For these reasons, this argument by King is without merit.

6

### 3. Informant Cell Phone Records.

Next, King raises an issue regarding the cell phone records of Dominguez, the confidential informant. King alleges that these records were revealed only after his trial, and that they establish that the "prosecution's officer's testimony was false and use[d] in closing argument to render a conviction." *Id*. The government maintains that "the cell phone records of Dominguez were known to and in fact provided to King prior to his trial and were not newly discovered evidence." Government's Response, p. 19.

King actually admits that Dominguez's cell phone records were in fact provided by the government prior to trial. Defendant's Memorandum, p. 16. His complaint seems to be that the records were submitted under seal (*Id*.), that "the jury did not assess [the records] as material evidence" and that the "government did not submit cellphone records into evidence" because the records did "not corroborate the government's case . . . ." *Id*., p. 17. By King's own admission then, the cell phone records at issue do not constitute "newly discovered evidence."[3] King's real complaint is that they were somehow exculpatory and that the government did not admit them at trial for that reason. In his § 2255 motion, King argued that his trial counsel was ineffective for having failed to introduce the records as "exculpatory" evidence. Petitioner's Memorandum in Support of Motion to Vacate, Docket at 166, p. 34. That argument was rejected at the time and King's attempt to recharacterize it in this motion as one involving "newly discovered evidence" does not advance his cause.  Just like the DEA report and the indictment of Villafana, the cell

---

[3] Furthermore, as the government points out, King acknowledged in his memorandum in support of his motion under 28 U.S.C. § 2255 (see docket at 166) that "[t]he government provided previous defense counsel a redacted copy of Dominguez's . . . cell phone records." *Id*., p.

7

phone records are not "newly discovered evidence" and lend no support to King's request for a new trial.

**4. Post-Trial Correspondence.**

Finally, King argues that some written correspondence between one of his attorneys and the office of the U.S. Attorney "reveals prosecution relied on use of officer's perjured testimony, failed to disclose material evidence, and included its use in closing arguments." Defendant's Motion for New Trial, p. 2. King then refers to "group exhibit C," which he attached to his motion, as evidence that supports this argument. *Id*. "Group exhibit C" consists of a letter from King's attorney, Stanley Campbell, to counsel for the government, Tina Nommay, dated May 18, 2001. In that letter, Mr. Campbell informs Ms. Nommay that "King has asked me to get a copy of the tape of the telephone calls. Additionally, he wants the cell phone records of the confidential informant . . . ." The second exhibit King submitted is a letter from Karlee Coviello, a law enforcement relations analyst with VoiceStream Wireless Corporation, written to DEA agent Miguel Rivera and dated October 9, 2001, in which Ms. Coviello provides certain VoiceStream subscriber information which she states was being provided "in response to the subpoena issued pursuant to § 21 U.S.C. 876, dated September 26, 2001 . . . ."

It is not entirely clear, even with a very liberal interpretation of King's pleadings, what significance these documents have or how they help substantiate any argument for a new trial. Even the government admits that it "isn't quite sure where King is going with this argument." Government's Response, p. 19. The crux of King's argument, however, seems to be his contention that there was some sort of discrepancy or even subterfuge with regard to the cell phone records and/or his attorney's May 18, 2001, letter to Ms. Nommay. But neither the letter

8

from Mr. Campbell nor the letter from Ms. Coviello constitute any type of "evidence," even if King never saw them until recently.  Nor do they add credence to King's argument that the government somehow relied on perjured testimony in order to obtain his conviction.  The government argues, and perhaps this is correct, that this argument by King actually constitutes a "sufficiency of the evidence claim." *Id*., p. 20.  If that is the case, then the government is likewise correct in pointing out that such a claim, pursuant to Fed.R.Crim.P. 33, would have had to be raised "within 7 days after the verdict or finding of guilty . . . ." *Id*. at n. 14 (referring to Fed.R.Crim.P. 33(b)(2)).  It is not a valid claim under section (b)(1) of the Rule, which is how King presents it.  King does refer to his lawyer's letter to the U.S. Attorney as "post-trial discovery . . . ." Defendant's Motion, p. 2.  It may very well be true that King never saw the letter until after his trial, but since the letter does not constitute evidence, either favorable or unfavorable, and since it does not appear to have any bearing on King's case or defense, it clearly cannot form the basis for a claim for a new trial based on newly discovered evidence.  King fails to establish that either of the documents he filed in support of this argument constitute "newly discovered evidence" as that term is contemplated by Rule 33.  More importantly, he fails to even raise an issue (with *any* of his arguments) that any of the material or documents he refers to are "material" or that they "would probably lead to a verdict of acquittal" which is the burden he bears in this motion.

     The record in this case is extensive.  Numerous pre-trial hearings were held which addressed, at least in one form or another, the issues which King raises in this motion.  King went to trial, presented his evidence, and was found guilty by a jury.  He presented a direct appeal to the Seventh Circuit Court of Appeals, and he filed for post-conviction relief under 28

U.S.C. § 2255.  Having failed to succeed at any of those stages in the case, King filed the present motion, which falls outside the confines of a successive collateral attack (which he would be precluded from presenting).  However, as the government states, "[w]hat King is trying to do is simply to make new arguments . . . ."  Government's Response, p. 20.  But even to the extent that any of these arguments are really new, they still fail to establish even a colorable claim to the right to a new trial.

## CONCLUSION

For the reasons discussed herein, the Motion for New Trial Based on Newly Discovered Evidence filed by Bryant J. King is hereby DENIED.


Date: October 26, 2005.


                   /s/    William C. Lee
                   William C. Lee, Judge
                   United States District Court